Good morning. Mitch Tilner for the Appellant Sunbeam. I'd like to reserve three minutes for rebuttal and I will watch the clock. Time permitting, I will address two issues. The warnings and the girl's entitlement to damages for emotional distress as bystanders. First, on the warnings issue. The trial court reconciled the seemingly inconsistent verdict by construing the verdict to mean that the design of the heater did not cause any harm but inadequate warnings did cause harm. So the judgment really stands or falls on the issue of the warnings. The warnings given were adequate as a matter of law and for that reason the judgment should be reversed. Sunbeam clearly, unambiguously and repeatedly warned against the very risk that occurred. The risk of fire if combustible clothing came within three feet of the front of the heater. Let's look at the warnings. On the front base of the heater there was a decal which said warning risk of fire. Clothes should be kept at least three feet from the front of the heater. On the power cord there was a tag. I think the argument is more a question of failing to warn about not sleeping with the thing on and the diminution of the warnings by the sort of contrary notion that the thing had safety features and would automatically turn off and so forth. Thank you, Your Honor. With respect to the absence of a sleeping warning, the law is very clear that a warning is evaluated not in retrospect, in hindsight, after the accident. But the Consumer Protection Agency before the accident had said that these kinds of heaters shouldn't be used while one was sleeping. Did they not? They did warn, they did issue a public advisory that no space heater, not just this one, no space heater should be used near a sleeping person. Well, of this type. There's the convection and the quartz, and the convection is okay, but the quartz isn't, I think. I think the Consumer Safety Commission, I think their advisory applied to both convection and radiant heaters. It applied to space heaters generally. And they said these should not be used near a sleeping person. Now, there's no regulation or law that requires a warning to that effect. But that's not the test. Well, the test is whether the warnings given were adequate. Right. Not whether, in retrospect, a better warning could have been given. Why isn't that a jury question? Well, ordinarily it is. But in this case, the warnings given were completely clear and unambiguous. They anticipated precisely the risk, and they advised how to avoid it. The warning said, risk of fire. Keep clothing more than three feet away. Had that warning been heated, there would have been no fire. Now, in retrospect, yes, a warning that this heater should not have been used while sleeping, that also would have prevented the accident. That would have been also an adequate warning. But I guess the trouble I'm having is that you keep talking about in retrospect, but before the fire occurred, the government agency in charge of the safety of products said you shouldn't have these on when people are sleeping. So how is this a retrospective Monday morning quarterback situation when, at the time, the government agency was saying don't have them on while you're sleeping? That was an advisory. The agency did not require the warning. But you just conceded before. It doesn't have to be legally required for there to be potential tort liability. Your Honor, the agency issued that advisory. A warning to that effect would have been adequate. The issue here, though, is whether the warnings actually given were adequate. Right, and again, that gets back to, so you're saying as a matter of law, no matter what the CPSC said, as a matter of law, as long as they had that tag on the cord and the label, there could be never liability for the scenario here, period. In this case, that is correct, Your Honor, because the warnings actually given were complete, completely clear, unambiguous, unequivocal. They anticipated precisely what happened. They warned against it. Those facts other courts have held as a matter of law, the warnings are adequate. In fact, this court affirmed a summary judgment in a failure to warn case, holding as a matter of law the warnings were adequate. And that's our case. But in that case, was there a government warning beforehand saying don't do a certain thing or a fire can happen? I don't believe so, Your Honor. That was the one where the guy went in with his gasoline-soaked clothes and walked up to a heater? That's one. This Court's case was the one where a gentleman was fixing a burner on a boat, and the warning said disconnect the power before you begin work on this, and he neglected to do that. And this Court affirmed a summary judgment, finding the warning was adequate as a matter of law. This doesn't have to go to a jury. No one who reads this warning could not understand the risk and how to avoid it. And that's our case. Now, with respect to the other information provided, that plaintiff argues diluted the warnings that were given. This is evaluated under a reasonable consumer test. It's an objective standard. The question is whether a reasonable consumer reading all the information would have understood the risk and how to avoid it. So isn't that a jury question, then? Your Honor, not in this case because the information provided did not contradict, did not undermine, did not weaken the clear and multiple warnings about the risk of fire. There was other information provided about the auto safety shutoff feature of the heater. And that information told the user if the heater overheats, it will automatically shut off, and then you must let it cool for 15 minutes and then reset it before it will operate again. Nothing about that information contradicts or undermines or weakens the clear admonition that there's a risk of fire if clothing comes too close. No one reading the owner's guide would think, oh, well, there's an auto safety shutoff. If the heater overheats, it will turn off. No one would think, therefore, I can with impunity leave clothing in front of the heater because the heater will shut off. It's an objective standard. No reasonable consumer would think that. The word in the owner's guide was overheat. If the heater overheats, it will shut off. Wasn't there evidence in the record that your client knew about the advice from the CPSC to follow it, not to put the label on it? I believe they were aware of it. I'm paraphrasing here, but that wouldn't sell as well. People like to be able to have them on while they're sleeping. Well, that is how they're used, Your Honor. Yes, and that's not the problem. That is how they're used, and the problem is that fires start because people have them run when they're sleeping. That's why the guidance was given by the CPSC. Fires don't start if the warning is heated. If this warning had been heated, there would have been no fire. Now, they can't eliminate the risk of fire from this kind of heater. It's part of the ‑‑ it's inherent in the heater. When you can't eliminate a risk like that, the solution is you give a clear warning to protect the user. Now, if the warning is not heated, you can't fault the warning. Okay? I see I have about two minutes left. I do want to address bystander damages. If the Court will allow me in rebuttal, I can do that, or I can do it now briefly. Under California law, a plaintiff, to recover these types of damages, must show an emotional shock of perceiving an injury to a close relative. And the Schur v. Hilton Hotels case is important here because it was a fire case. Well, the Estrada case seems to me to be indistinguishable. And your argument is it's bad law and we shouldn't follow it, but it's California law. Well, Your Honor, Estrada is questionable because it's inconsistent with Schur v. Hilton. In Schur, the wife observed the burning building on a newscast, and she knew her husband was inside. And the Court said that is not sufficient to state the cause of action. In Estrada and here, the victims were present physically at the burn site. That's true. But the Schur court did not say it's the television that makes the difference. The Schur court said it's not enough to observe the fire. You must observe the injury because the point of the tort is to compensate for the emotional impact of perceiving an injury. So if the Court is not convinced that Estrada is inconsistent with California law, we do ask the Court to certify that question to the California Supreme Court. May a witness to a house fire recover by standard damages when the witness does not perceive an injury to the close relative? We ask for certifications. You're saying in a fire the children would have to actually see the mother with flames on her genitals or whatever? Not necessarily see, Your Honor. Perceive through the senses in some way. It doesn't have to be visual. It could be auditory. It could be tactile. But some impact is what the tort is looking for. I'm sorry. I'm having trouble. Tactile? What are you talking about? Well, for example, in the Wilkes case, Your Honor, the mother was in the living room. The little girl was in the bedroom. The mother spoke to the girl and said pull out the plug from the vacuum plug. The girl did so. There was a big explosion. The mother didn't see the girl being injured. But the mother felt the explosion. The mother knew exactly where the girl was standing, saw the explosion, and the court said there she sensorially perceived the injury to her daughter. That's good enough. That's not our case. The girls were here where they are watching the building burn, right? Am I remembering correctly? They did see the fire when they were walking back from the neighbor's house, I believe. That's what the record reflects, yes. Okay. So you don't think they perceived the heat? Is that what you're saying? They could feel the heat or hear the crackling? The older girl actually went back into the house. They perceived the fire. They perceived the fire, Your Honor. But what the tort requires is proof that they perceived the injury to their mother. That's what the tort requires. Well, I'm trying to figure out how you distinguish from the case you described about the vacuum cleaner. The mother hears the explosion in the other room. She knows the little girl is there. She hears the noise, right? So just to map on, the fires do make noise in the houses when they burn. You don't dispute that the girls were able to hear the fire, right? The girls were able to hear and see the fire, Your Honor. But the Wilkes case shows us. In the case of the vacuum cleaner, the mother didn't actually hear any screaming by the girl, right? The mother perceived the injury to the girl. How? How? Because the mother knew exactly where the girl was standing. The mother saw the explosion at that location, saw the flare of the explosion coming out of the bedroom. The court said that is a sensory perception of the injury. I'm just not understanding how this is different. Because the girls here did not. I mean, the girls know where the bedroom is in the house, right? They did not know the mother was in the bedroom. I see. She might have crawled somewhere else. The father escaped the bedroom. There's no evidence that the girls knew the mother was also in the bedroom and hadn't escaped. So they know she's somewhere in their fire, but they don't know the precise location. That's how you distinguish that case. Your Honor, there's no evidence they knew she was in the fire. There's no evidence. Wait a second. Wait, wait. They come out of the house. There's a fire with their dad. All the girls are there and there's no mom. And everyone's looking at the house, watching it burn. And they know mom lives in the house. And you're saying they had no indication the mom was in the house? The jury could not come to that conclusion? The bedroom had doors. The mother could have gone out of the bedroom. It was 6.15 in the morning. The mother could have gotten up, could have been somewhere else. They had the two girls on the stand. They could have asked this question, Your Honor. They could have said, did you know where your mother was? That was not asked. Okay, but then maybe you can argue the damages shouldn't be quite as much as if they were literally in the room watching mom get burned alive. But you're asking us to say it's a matter of law, that the kids could have no idea she was in the house? Your Honor, I refer you back to the Schur v. Hilton case. The wife watched the burning building. She knew her husband was inside. She watched it on TV. She watched it on TV. But that wasn't the critical factor for the court of appeal. The court of appeal said that's a red herring, that it was on TV. The real problem with her claim is she only saw the fire. She didn't see the husband. That was why her claim failed. So you would have us say that Schur overruled, in effect, Estrada? I would say they're inconsistent, Your Honor. Estrada is from this court. Schur is from the California court of appeal. Thank you. If I have any time left, I'll save it for you. Okay. Thank you. I'd like to start with Schur. First of all, it's a 1985 case. So Hilton v. LaChiusa is four years later from the California Supreme Court. Schur has been cited three times since 1985. It's not the controlling decision. But most importantly, it framed this second element of contemporaneous awareness differently than the Supreme Court did in Thing. Schur says that in order to state a claim, you have to have a contemporaneous perception of the infliction of injury. And that's the argument that Sunbeam is making, relying on Schur. But that's not the test that Thing, how they formulated. Thing said that the plaintiff must be present at the scene of the injury-producing event, which is the fire, and at the time it occurs, and be aware that it is causing injury to the victim. Not that you have to perceive the injury. So you've got a trio of cases, all decided post-Thing. You've got Zuniga, which they don't talk about, where the plaintiff arrives at the scene after the fire department has arrived, and he's allowed to assert a claim. You have Wilkes v. Hom, where the plaintiff did not perceive. She was blown out of the house and didn't see what happened. She was allowed to perceive. That was the vacuum cleaner case. Right. And then you have your decision, this Court's decision, in Estrada, where the victim drives away to go to the store. She knows her family is in the house. When she leaves, she comes back, the house is in flames. That satisfies the Thing's standard. The only way, and moreover, in their brief, Sunbeam didn't try to distinguish any of those cases in the opening brief. They didn't talk about Wilkes v. Hom. They cited it once on page 41 in a parenthetical. They didn't talk about Zuniga at all, and they didn't try to distinguish Estrada. The only mention of Estrada was in a footnote where they just said, don't follow it because it's been superseded. So I would submit that when you were in the Ninth Circuit and there was a panel decision that is directly contrary to your opinion, to your position, and the most you can say is in a footnote, don't follow the case, you don't have any basis to try to distinguish it. They didn't even try. So Scher is not the test, and clearly the – I mean, I have to – as Judge Owen said, the argument that Sunbeam is making here isn't just – it's proceeding like a jury argument. I don't think there's enough evidence. But the argument that they're making is that you have to say there was no evidence, that the jury couldn't have made that finding as a matter of law. I just don't think there's a basis for that. So with respect to the warnings, you know, we – on page 8 of our brief, we show the box, which says it guarantees the ceramic – it's got heat-safe protection. It has overheat protection. It turns the heater off in an overheat situation. Then the – when you look at the user guide, it tells you that the heater's equipped with a patented, technologically advanced safety system that requires the user to reset the heater if there's a potential overheat situation. And if a potential overheat temperature is reached, the system automatically shuts the heater off. This is a consumer product. It doesn't say don't use this when you're sleeping, that if your cat walks by and knocks something or there's some accident while you're asleep, if something gets a little closer than it should, that your house is going to go up in flames. Sunbeam's argument is the legal test they propose is as long as the warning, if heated perfectly, would have prevented the accident, then they're off the hook. So under that theory, if their heater ignited anything within a three-foot radius, as soon as it came within that three-foot radius, they'd be fine as long as they just said don't let anything combustible come within three feet. That's not how California products liability law works. So here, again, they're arguing that as a matter of law that the warning was sufficient. Now, both sides have pointed to a particular case, the Temple versus Velcro USA case, a California decision, where the court held that the warning was adequate as a matter of law. And I think that that's great. It's a wonderful template to see what does a warning that is so good that as a matter of law the court can decide the issue. And so the warning in that case had several points, but it said that the Velcro closure has not been designed and is not proper for use to secure the deflation panels in a hot air balloon. It says that any balloon that uses the Velcro closure for that purpose is unsafe because the panel will open up and result in untimely rapid deflation and uncontrollable descent and serious injury or death to those in the balloon. You should not fly any hot air balloon unless and until it's been retrofitted with a designed deflation panel that doesn't use Velcro. The use of the closure is extremely dangerous. You get the idea. There's no way. What the court ultimately said is we cannot imagine a better warning. We just don't know what more Velcro could have done here. I don't think you can say the same thing with respect to the warnings that were given in this case. It doesn't have a warning about don't use it while you're sleeping. It's very clear that you're not supposed to have anything within three feet. It does say that, Your Honor. I can't deny it. But the people, the family went to bed.  While they were sleeping, they were not able to see what was going on. Somehow something got too close. This is a consumer product that they are told. They're not said don't use it while you're sleeping. He wouldn't have bought it if it said that. Basically, they are required to take a major use of the product off the table by saying don't use this product for the very reason many people buy the product. Whereas, you know, it can be used safely while sleeping if you just make sure nothing comes into contact with it within three feet. Your Honor, I think that this is the arguments that are being made. It's not the sleeping that causes the fire. It is the failure to keep something away from the base of the heater, which, by the way, they were aware, Sunbeam's aware, that their detection system has been engineered to pass the UL standards by putting the sensor up high so it meets the specific test that UL had. And as a result of having the sensor up high, and Sunbeam knew this, anything that's at the base of the heater doesn't trigger the sensor. And they were aware of that, but they didn't warn against it. They could have had a warning that said, although we have a sensor, it's not going to detect any problem at the base of the heater. Keep things away from the base of the heater. There were many things they could have done, and ultimately that's why it was a jury question, not an issue of law. The jury had all this information. Sunbeam was allowed to point to its warnings and say, these are clear. We were allowed to say the warnings were diluted. And ultimately, as in the great majority of cases, this is a factual question. Sunbeam lost, and I think the question is, is there substantial evidence that would support that? And I think there is. And even though I have time left, that's all I've got to tell you on those issues. Okay, thank you. Thank you. Governor, I think you're out of time, but we'll give you a minute for rebuttal. At pages 24 and 25 of our opening brief, we distill or we quote the principles that ultimately guide this court in this case. There can be no liability for failure to warn where the instructions or warnings sufficiently alert the user to the possibility of danger. And again, when a sufficient warning is given, the seller may reasonably assume it will be read and heated. And a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous. Thank you. Okay, thank you. Page 5. We're adjourned. All rise.
judges: Kozinski, Owens, Wilken